**NOT FOR PUBLICATION**

```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------  X
                                                             :
PROFESSOR EVELYN C. MAGGIO,                                  :
                                                             :
                              Plaintiff,                     :   **MEMORANDUM**
                                                             :   **DECISION AND ORDER**
              -against-                                      :
                                                             :   05 cv 4211 (BMC)
CITY UNIVERSITY OF NEW YORK, et al.,                         :
                                                             :
                              Defendants.                    :
                                                             :
                                                             :
-----------------------------------------------------------  X
```

**COGAN**, District Judge.

The parties' various motions for summary judgment are disposed of as follows.

## I. Hostile Work Environment and Retaliatory Hostile Work Environment

Even putting aside the improper hearsay, argument, and conclusions in plaintiff's affidavits, as I have done, there is more than sufficient evidence to raise an issue of fact as to whether plaintiff was subjected to a hostile work environment. Unlike the cases cited by defendants, this is not a situation in which a plaintiff is viewing what would otherwise be innocuous or trivial actions through the prism of a single offensive comment or gesture.

Rather, viewing the facts in the light most favorable to plaintiff, as I must do on these motions: (1) Egbe discussed his dissatisfaction with his wife's sexual performance on "three to four" occasions in September and October 2001, expressing his sexual preference for American women (of which plaintiff is one) over Nigerian women like his wife; (2) plaintiff told him to stop coming to her office anymore when he asked her to advise his wife on how to sexually satisfy him; (3) she locked him out of her office over the next two months although he kept

knocking to come in (she ignored the knocking); (4) plaintiff complained to the Chair of her department, Dr. Ezuma, who told Egbe to leave plaintiff alone, advice to which Egbe reacted with indifference or hostility; (5) when she started leaving her office door open in mid-January, 2002, Egbe again came to her office (although he had been asked to stop by both her and Ezuma) in February 2002, at which time she told him to leave again; (6) sometime that Spring, she observed him standing outside her classroom on repeated occasions, and when she asked why, he said he had never seen the portable classrooms in which she taught before, although those classrooms had been there for many years; and (7) she reported her perception of harassment to her superior and others on numerous occasions. There is no need to restate the abundant additional facts that plaintiff has placed in the record which, if accepted by a jury, would clearly prove a hostile work environment.

The same is true for the claim of retaliatory hostile work environment. I agree that "rebuffing" is not a protected activity, but complaining through the provided channels about it certainly is. The pattern of stalking that plaintiff describes is not causally disconnected from her complaints about Egbe. The alleged stalking is pervasive enough so that a finder of fact could conclude that he continued and increased that activity for the purpose of either continuing sexual aggression or getting back at her, both of which are actionable. Defendants' argument that Egbe's following her around in the manner she describes was not "sexual" or "gender based" is unconvincing in light of the three or four comments in which, according to plaintiff, he made a boorish attempt to initiate a sexual relationship. At the very least, a finder of fact should be allowed to consider why CUNY did not put up an airtight firewall between the two of them instead of allowing Egbe, according to plaintiff's allegations, to have continued input into her schedule, depriving her of classes she had traditionally taught, and requiring her to be on campus

2

five days each week, unlike any other professor in the college, and placing his office when he came back from sabbatical two doors down from hers.

I recognize that some of the acts about which plaintiff complains, for example, the failure to give her a working computer, do not constitute severe enough consequences to deter a reasonable employee from complaining. But taken together, the facts alleged by plaintiff, if true, could constitute retaliation. Although defendants have offered non-retaliatory reasons for their actions, the circumstances plaintiff has placed into the record are ample to create an issue of fact as to whether those reasons are pretextual.

CUNY defendants also contend that the retaliation claim and plaintiff's sabbatical leave claim must be dismissed because they were not expressly opposed in plaintiff's opposition brief. Defendants cannot dictate the order and structure of plaintiffs' opposition papers. The facts supporting her arguments on those points were specifically referenced in plaintiff's opposition brief, and that is sufficient to preserve those issues.

In addition, plaintiff's references to other evidence showing retaliation that was not alleged in the Amended Complaint (e.g., the thrown doorstopper), did not have to be alleged there. Rule 8(a) did not require her to set forth all evidence of retaliatory intent in her complaint. These events constitute evidence of retaliation, not separately actionable claims. The Court will instruct the jury along those lines if defendants request it, or may grant a motion in limine if the evidence should not be admitted.

The jury may ultimately find that plaintiff's allegations are untrue or only partially true and that she is overly sensitive. It may alternatively find that Egbe was stalking her and the College failed to properly respond to her numerous complaints. But in either event, the issues of fact in the record are palpable. Nothing could better confirm this than the briefs and affidavits

3

that Egbe has submitted, in which virtually the whole argument is an attack upon the credibility of plaintiff and the witnesses who support her. There is no basis at all here for judgment as a matter of law.

**II. EPA Claim against CUNY and NYCHRL Claim against Jackson**

Summary judgment is granted dismissing this claim. Although plaintiff has made a *prima facie* case under the EPA, she has not in any way rebutted CUNY's showing that the hiring of male faculty at the Associate Professor level was based on a differential other than sex. The parties' back-and-forth discussion in their briefs, in which they stress the qualities and deficiencies of each comparator that they think shows or refutes substantial equivalency, only demonstrates their disagreement over what characteristics are most important for an academic at the institution to have. CUNY is entitled to deference in prioritizing those criteria, and there is nothing on their face nor in their application that gives rise to an inference of sex discrimination.

In the usual EPA case, the plaintiff submits statistical evidence through an expert, via a regression analysis, that factors for legitimate employment criteria to arrive at a conclusion of sex discrimination. Although expert evidence is not required, there must be some indication that something more is at issue than mere disagreement over what attributes of potential employees are most important. To put this issue to a jury on the record that I have before me would be to ask it substitute its own view on that issue, and in the absence of any admissible evidence of pretext, that would be improper.

For the same reason, the NYCHRL claim against Jackson is dismissed. In addition, plaintiff has not responded to his argument that the claim is time-barred, and it is dismissed for that reason as well.

4

**III. Egbe's Counterclaims**

Summary judgment is granted dismissing Egbe's claim for intentional infliction of emotional distress. The conduct of which he complains, essentially, personal disparagement in a business context, is not the sort of conduct that this cause of action was created to address. His alleged injuries or potential alleged injuries, a required element of the claim, are attenuated from the commission of the alleged tort, and insufficiently serious to support it. There are other common law claims that address the facts that he alleges; the kind of gap-filling of common law claims for which this tort was created is not necessary here.

The libel claim is also dismissed. The record is undisputed that the press contacted plaintiff, not the other way around. It is equally undisputed that plaintiff said little, mostly responding to questions. This was not an orchestrated media campaign in which plaintiff filed the action for the purpose of immunizing what might otherwise be defamatory statements. Moreover, the only statements attributable to plaintiff were either true or constituted opinion: Egbe is not a flunky; he is the person who would have a substantial role in whether she would stay; and in plaintiff's view, her future at CUNY has been compromised because she complained. Viewing those statements in the context of the entire article, they become at most fair reporting under N.Y. Civil Rights Law §74.

Summary judgment is denied as to the false arrest/false imprisonment claim. Despite plaintiff's self-portrayal as "reluctant" to cause Egbe's arrest, the undisputed facts show that she intentionally swore out a complaint against Egbe for the very purpose of having him arrested. She was not a bystander nor did she act as a neutral observer who happened to have information in which the police would be interested. The fact that on earlier occasions, she declined to go through with the arrest does not mitigate the fact that she felt it was ultimately necessary to have

5

him arrested. In fact, her dissipated reluctance stands in contrast to her ultimate decision to instigate the arrest.

Whether her conduct is actionable depends on her good faith, which again depends on whether her or Egbe's version of the events leading up to the arrest is accepted. Accepting Egbe's, as I must do for purposes of the motion, the question becomes one for the jury.

## **CONCLUSION**

Defendants' motions for summary judgment [86, 89] and plaintiff's motion for summary judgment [76] are granted in part and denied in part as set forth above. By separate Order, the Court will schedule the final pretrial conference.

**SO ORDERED.**

                                            signed electronically/Brian M. Cogan
                                                              U.S.D.J.

Dated: Brooklyn, New York
       February 17, 2008